Would the clerk please call the next case? 319-0719, People of the State of Illinois, accompanied by Laura D. Michael Bynum v. Morgan Blakey, account by Carrie Bryson. Ms. Bryson? Good afternoon, Your Honors. May it please the Court, Counsel, Carrie Bryson, Assistant Appellate Defender with the Office of the State Appellate Defender, and I represent Morgan Blakey in this case. As the Court is aware, we've raised two issues in the briefs filed in this case, and I'd like to address each in turn, time permitting. This case is a tragedy. There's no two ways about it. There was a motor vehicle accident in November of 2011. Three passengers in the vehicle were killed. It was a single car accident. My client, Morgan Blakey, was the driver. There were actually four other passengers in the car, one of whom also survived, along with my client, but the three backseat passengers were killed. They were all friends. What we've raised in this case is an issue about the trial evidence, and asked for a new trial, and then a question about the length of the sentence. The evidentiary issue is what I'd like to talk about first. Specifically, whether or not Theo, the front seat passenger's out-of-court statement to the police should have been admitted as substantive evidence in this case, or was improperly admitted in that fashion, and also was not proper as impeachment. That statement was made by Theo to a police officer in his hospital room the day after the accident. He recounted to the officer that he heard a backseat passenger say, hey Morgan, you shouldn't be doing that. At trial, the testifier didn't recall that statement being made. The state then sought to introduce his statement to the police as substantive evidence. And the Illinois Supreme Court has provided us some guidance on this question recently, because the dispute in this case hinges on one particular requirement of the statute allowing for substantive use of prior out-of-court statements, and that is the personal knowledge requirement. And in People versus Simpson, the Illinois Supreme Court recently clarified what that personal knowledge requirement hinges on. And the court said it wasn't enough where an out-of-court statement recounts another person's statement. Personal knowledge required by the statute is not satisfied by simply having perceived the statement being made. Personal knowledge must actually mean the individual perceived the event, which is the subject of the statement. In this case, again, the statement, hey Morgan, you shouldn't be doing that. Theo said he didn't see what that was that the backseat passenger would have been referring to. He was preoccupied looking at his phone, texting or communicating with his mother. Did not see by the time Theo looked up and looked over at Morgan. Theo was the front seat passenger with my client. By the time he looked over, Morgan had slumped over and the car was drifting off the road. So the personal knowledge requirement was not met under Simpson's very recent Illinois Supreme Court precedent on the subject. The statement also was not properly admitted as impeachment. Impeaching your own witness, and Theo was a state's witness, requires that that witness have done some affirmative damage to your case. It's not enough to just be inconsistent, it has to be affirmative damage. It has to positively aid the opponent's case. In this case, Theo's testimony would have had to positively aid the defense case. Theo's testimony in this case didn't rise to that level. What he said was that he heard somebody on Morgan, later said he heard, slow down or wake up. Those things didn't do affirmative damage to the state's case. They were disappointing, I'm sure, to the state that that was the testimony. But the state's case was no worse off than it would have been had he not testified at all. And that is the standard that comes out of the case law. The Cruz case talks extensively about affirmative damage. This does not meet that requirement. Moreover, the state has argued that we don't even need to be talking about introducing this under the statute as substantive evidence or introducing this as impeachment because the state argues that Theo actually acknowledged that he heard what the passenger said at a point in his testimony. I don't think the record backs that up. The prosecutor asked Theo, was it what you heard referring to this out-of-court statement? I don't remember. Well, you can't remember or you don't want to remember because he was your friend. There's an objection, it's overruled, the prosecutor restates, is it that you don't remember or you don't want to say because you don't want to see Morgan get in trouble, he's your friend. And Theo's response was simply, he's my friend. The prosecutor then said, that's enough. And didn't question him further, didn't clarify, well, okay, he's your friend, you heard the statement, he's your friend, you don't want to tell me you heard the statement. There is no true acknowledgement on this record. It was not good enough, contrary to what the prosecutor said in the trial court. And it's backed up by the fact that the state and the defense and the court then have an elaborate discussion about does this come in under the statute. Had Theo acknowledged the statement, had he said he heard it, we wouldn't be having a debate then about can it come in under 11510.1 and that is where this case went. I'd like to touch too on prejudice. We've argued about the evidence coming in. Simpson again addresses it doesn't have to be necessarily outcome determinative, it's a reasonable probability standard. A reasonable probability that the outcome might have been different. And in Simpson they acknowledge there was other evidence from which guilt might have been inferred, but this was a significant piece of evidence. In Simpson it was a significant piece of evidence as well and that was enough. The standard is a reasonable probability of a different result. The state emphasized this statement in its closing argument, pointing to it as direct evidence that my client had been engaged in huffing activity and it was relied on by the court at the verdict. We would assert then that it was prejudicial, this error should be found not just to be error but to be reversible error and my client should be awarded a new trial. I'd like to turn to the sentencing issue as well. Morgan Blakely was sentenced to 12 years in this case. The sentence should account for both the seriousness of the offense and have the goal of restoring the offender to useful citizenship. That's described by the Illinois Constitution, the case law. What was presented and found as aggravation in this case was simply the need for deterrence. There was a whole host of mitigating evidence that was presented. Morgan Blakely is young, he was 19 I believe when this accident happened. He has a young family, he has a wife, he has young twin daughters that were 19 months old at the time he was tried or maybe sentenced. They're three and a half now. This is not the sort of thing likely to recur. Morgan Blakely had no criminal history, not even an arrest history. He's the support of an extensive number of family and friends. He complied with all of the conditions of his pre-trial release. He tested clean for drugs and alcohol numerous times during that release. He's been a law-abiding citizen leading up to this. He's been a law-abiding citizen since this. This was an impulsive act. It had a serious result. We're talking about the seriousness of the offense, there's no question the result in this case was serious. But the conduct in this case was impulsive. And the United States Supreme Court has been really clear recently that we ought to be looking at things like youth and the attendant characteristics of youth when we are fashioning an appropriate sentence for an individual. 19 year olds, 19 year old boys make stupid decisions. Weighing all of that mitigation against deterrence and coming up with a 12 year sentence is too harsh. Of that 12 year sentence, Morgan Blakey will have to spend 10 years, 2 months, and 12 days in prison. He's got a little over 8 years to go from where we are today, right now. Because it is an 85% sentence. I would suggest the court use its discretion in imposing that 12 year term because to serve the purpose of deterrence, a lesser term would do that. A prison sentence is going to serve the purpose of deterrence. And it was a 6 year minimum here. The families of the victims, the young men who were killed, they didn't ask for extensive prison terms. Not that that's determinative, but it's certainly indicative of what they saw as well. That this is a tragedy, it's a tragedy for everybody. Not just for the young men who lost their lives, but for Morgan Blakey who lost his friends due to his impulsive conduct, who is now separated from his family for a lengthy period of time. And for all of those reasons, we'd ask this court, if you don't reverse and remand for a new trial, to exercise your discretion under Rule 615 and reduce the sentence in this case. Any questions? Thank you, Ms. Bryson. Ms. DeMichael Bylon. It's Bylon, a sneaky silent A in there now. May it please the court, counsel. Laura DeMichael Bylon on behalf of the people. Regarding the first issue, the trial judge acted within his discretion in admitting Theo Fritsch's statement. Again, it's an abuse of discretion standard. The people do contend that Fritsch ultimately did admit making it. Referring to hearing a passenger say, hey Morgan, you shouldn't be doing that. When Fritsch was asked, is it that you don't remember? Or you don't want to say because you don't want to see Morgan get in trouble, he's your friend. He answered, he's my friend. He doesn't say, he doesn't remember. It's not a strain to interpret that as admitting that he didn't want to say he remembered because he was his friend. Because that's actually how the trial judge interpreted that. As seen in his statement on page 426 of the record. Second, Fritsch did have personal knowledge of what the passenger said. Again, this isn't a case that's analogous to Simpson. Defendant is attempting to expand from the facts of Simpson. In Simpson, there was a witness who was not present at the time of the offense. It was a beating. He wasn't there when the beating occurred. After the beating occurred, according to his statement to police, he was told by defendant that defendant hit the person with the bat 30 times. But he only knew that because of what defendant told him after the offense. That witness had no personal knowledge of the beating because he wasn't there. So he only could know about it what he was told about it later. Here on the other hand, Fritsch did have personal knowledge. He was there. Although he didn't see it, he did hear what he heard. He had personal knowledge of everything he described to the officer. He had heard with his own ears the passenger say, hey Morgan, you shouldn't be doing that. And he didn't gain any knowledge of the offense after the fact. He gained the knowledge from being there himself. Third, Fritsch's statement was admissible for impeachment. Under the Leonard case, professed lack of memory can be considered damaging. And the people who note that defendant's reply brief argues that this is a critical piece of evidence. And if it's critical, then that would be damaging, this professed lack of memory. And although the people acknowledge it was a piece of evidence that the trial judge did rely on, the people's last argument in this regard would be that there was so much other evidence that the trial judge also relied on that any error was harmless in this case. The evidence was overwhelming that defendant passed out due to huffing, and there's not a reasonable probability of a different outcome. What about the alleged prior blackouts? Well, the alleged prior blackouts, actually, he couldn't keep his story straight about the seizures. He told one person that he passed out at a stop sign the day before. He told another person he passed out at a stop sign the morning of. The trial judge specifically found that that person was lying to protect his friend. And he told a third person, I believe, one was a doctor, one was a friend, and one was a police officer. He told a third person that he passed out the day before, came to him in a chair, didn't know what happened. So even if stories about seizures aren't consistent, and people would contend that under the Homerson case, these false exculpatory statements can actually be viewed as evidence of guilt. Moreover, the most important piece of evidence here was that the trial judge found that defendant admitted huffing to before the accident, although defendant's brief seeks to challenge whether he admitted it or not. The trial judge's finding was that his statements to the officers were an admission, and that was supported. He nodded his head, and I believe he was asking, can you verbalize that, and he says, yes. Defendant tried to argue that yes wasn't in reference to that. The officer who was testifying about this exchange said that that verbal yes was clearly in reference to, can you verbalize were you huffing, yes. And also two officers testified as to defendant nodding his head in response to were you huffing. Two officers attested to that affirmation through the nod, and both of them also said that he verbalized the yes in response to that. And the trial judge's finding that that was an admission wouldn't be affected by whether this statement comes in or not, it's just how he interpreted the testimony of the two officers, the enhanced recording, the transcript that was made. So his finding of the admission wouldn't change, and then the other facts that the trial judge found supported this admission, the trial judge found that it was defendant's idea to go there to Walmart that day, defendant, everyone got in his car, or his girlfriend's car that he was driving, he drove straight to Walmart, defendant went to the back of the store, fridge handed him the can of canned air, he went to the front, defendant bought the can of canned air, the accident occurs about ten minutes later, no one else bought anything else, the whole purpose of this Walmart trip, and it's even on video of him buying this can of air, going to the back and buying this can of air, the whole purpose was to buy that can of air, it had a safety tab on it when it was purchased, the trial judge found, but that tab had been pulled off before the accident, everyone else missing from the can was consistent with the one-time use of the can for huffing. There's additional facts that are found by the trial judge in the people's brief, but the main thing is that defendant admitted it, and that's supported by facts, and his stories about the seizures were inconsistent. Regarding the second issue, the trial judge acted within his discretion in sentencing the defendant, the legal standards here are set out thoroughly on page 14 of my brief, they are what determines the answer in this case, defendant argues that the trial judge failed to give adequate weight to the mitigating evidence, and has rehashed that, however, it's presumed that the trial judge considered the mitigating evidence absent, some indication to the contrary other than the length of the sentence imposed, there's just no indication to the contrary that the judge ignored the mitigation evidence that was before him, he even did mention specifically many of these pieces of mitigation on the record, and that he was considering them, however, it was a very serious offense, three teenagers died, their families were devastated, they didn't ask for leniency, one of them said we'll never forgive him, he should have to live it over and over and over again, because we have to live it again over every day, another family member of a victim said they didn't want him to get the easy way out, it is true that one said they didn't want him to suffer, but they noted that we have suffered, and another letter reflected not wanting defendant to know how it feels not to be able to see his children because the parent couldn't see their child, so to the extent that it's argued that the families were all in favor of something close to the minimum, the people just note that their statements reflect the serious damage that was done to their families, so it's not the duty of this court to reweigh the sentencing factors, and nothing shows that the judge didn't consider the mitigation that it's argued now that he didn't. All the people would ask that this court affirm defendant's conviction and sentence. Any other questions? Thank you. Thank you. I'd like to touch on the state's harmlessness argument and the evidence in this case, specifically, Justice McDade, you asked about the alleged prior blackouts, and there were multiple statements made about those. One of them was to a friend of his the morning before the accident, according to the friend's testimony. Another one to a police officer, the doctor, his mom also described he'd been having headaches, and there was conflicting evidence, and really when it comes down to it, who are you going to tell about your problems? You're going to tell a friend. It's not his fault that the friend was the witness who could come forward and say, hey, he told me he had had a seizure or blackout or something at a stop sign, you know, the day before or the morning of. That's who you tell about these kinds of things. And so suggesting that that witness was incredible because he's a friend, his testimony is that he was told about this before there even was an accident, and so I don't think we should fully discount that testimony. I also don't think the huffing admission is really that strong, as the state suggests. I'm looking back at my statement of facts, and I don't have the full record in front of me, but the officers testified that one of them told Morgan he thought Morgan had been huffing, had not intended to pass out or hurt his friends. And then the officer's testimony was that Morgan responded by nodding his head and saying yes. It's audio recorded, this interview at the hospital with Morgan. I don't hear a yes. I've listened to it. It's available to the court in the record. Whether or not he nodded his head, Morgan's father was in the room at the time. He couldn't back that up. He said he was looking at the officers, not at his son. I don't think the testimony is as strong as the state represents it to be. Regardless, this isn't a reasonable doubt argument. It's just, is there a reasonable probability that the outcome likely would have differed without this testimony? And this was significant. This was the only kind of direct, it's still not even really direct, evidence that anybody saw Morgan do something improper at the time. The rest is reasonable probability of a different outcome. As to the sentence and the question of what the victim's families were in favor of or not and having to live it over and over, one of the things that was suggested and it may have been in that context was it would be a great idea for Morgan to go out and talk about this to other kids. To me that's really where deterrence comes from. Not from you can get 6 years or 12 years or 18 years or whatever sentence would be imposed. You're deterred by the thought that you could do something like this. You could do something that would take your own life, that would take your friend's life, that would ruin your life forever. That's deterrence. The difference between a 6 year sentence and a 12 year sentence when the only aggravation, the only aggravating factor the court found was deterrence is arbitrary to pick that number. And for that reason we would suggest that a lower sentence would serve the same purpose and we'd ask this court to reduce the sentence if you don't order a new trial. Thank you Your Honor. Thank you. We will appreciate your arguments this afternoon. We'll take them all under advisement and we'll issue a written decision as quickly as possible. The court will stand in recess until December 1st.